DAVID T. HAYEK (SBN 144116)
dhayek@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
350 South Grand Avenue, Suite 3600
Los Angeles, CA 90071-3476
Telephone: 213-680-2800

JOHN DeLASCIO (*Pro Hac Vice*)
jdelascio@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000

Attorneys for Plaintiffs
REGENT INSURANCE COMPANY,
STONINGTON INSURANCE COMPANY, and
QBE INSURANCE CORPORATION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

REGENT INSURANCE COMPANY, a Wisconsin Corporation; STONINGTON INSURANCE COMPANY, a Pennsylvania Corporation, QBE INSURANCE CORPORATION, a Pennsylvania Corporation,

Plaintiffs,

vs.

STONE SOURCE LLC, a Delaware Limited Liability Company; DOES 1-10 inclusive,

Defendants.

Case No. 2:25-cv-06702-MRA-MAA

District Judge: Hon. Mónica Ramírez Almadani

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

District Judge: Hon. Mónica Ramírez Almadani

Date: January 12, 2026
Time: 1:30 p.m.
Place: Courtroom

[Filed concurrently herewith: Notice of Motion for Judgment on the Pleadings; Request for Judicial Notice in Support of Motion for Judgment on the Pleadings; Appendix in Support of Motion for Judgment on the Pleadings; and Proposed Order]

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. PLEADED FACTS ........ 1

A. The Underlying Actions ........ 1

B. The Insurance Policies ........ 3

III. STANDARDS ........ 5

A. Judgment on the Pleadings ........ 5

B. Policy Interpretation ........ 6

C. Duty to Defend ........ 7

IV. ARGUMENT ........ 8

A. The Silica Or Silica-Related Dust Exclusions Unambiguously Bar Coverage for Injuries Arising Out of Silica or Silica-Related Dust Inhalation or Ingestion. ........ 8

B. Applying the Silica Or Silica-Related Dust Exclusions to the Underlying Actions, There Is No Potential For Coverage and Thus Plaintiff Insurers Owe No Duty to Defend. ........ 11

V. CONCLUSION ........ 13

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*24th & Hoffman Investors, LLC v. Northfield Ins. Co.*, 82 Cal. App. 5th 825 (2022) ....7

*AIU Ins. v. Superior Court*, 51 Cal. 3d 807 (1990) ....6

*Belmonte v. Emplrs Ins. Co.*, 83 Cal. App. 4th 430 (2000) ....7

*Browne George Ross LLP v. Lexington Ins. Co.*, 138 F. Supp. 3d 1149 (C.D. Cal. 2012) ....7

*Burlington Ins. Co. v. Alan*, No. C 12-03372 SI, 2013 U.S. Dist. LEXIS 61835 (N.D. Cal. Apr. 30, 2013) ....10

*Buss v. Superior Ct.*, 16 Cal. 4th 35 (1997) ....8

*Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal.4th 945 (2001) ....8

*CMB Devs. Inc. v. Associated Indus. Ins. Co.*, No. 2:19-cv-09973-SVW-RAO, 2021 U.S. Dist. LEXIS 148897 (C.D. Cal. July 9, 2021) ....10

*Granada Ins. Co. v. A&J Luxury Group*, No. 50 2020-CA-013450, 2022 Fla. Cir. LEXIS 1336 (Fl. Cir. Ct. April 6, 2022) ....6

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542 (9th Cir. 1989) ....6

*Inns-by-the-Sea v. Cal. Mut.l Ins. Co.*, 71 Cal. App. 5th 688 (4th Dist. 2021) ....7

*Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795 (9th Cir. 2017) ....10

*Medill v. Westport Ins. Corp.*, 143 Cal.App.4th 819 (2006) ....10

*Merrill Seeley, Inc. v. Admiral Ins. Co.*, 225 Cal. App. 3d 624 (1990) ....7

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
187 Cal. App. 4th 766 (2010) ....................6

*Northfield Ins. Co. v. Sandy's Place, LLC*,
530 F. Supp. 3d 952 (E.D. Cal. 2021)....................6

*Ocean Towers Hous. Corp. v. Evanston Ins. Co.*,
772 F. App'x 459 (9th Cir. 2019) ....................7

*Pittelman v. Pierce*,
6 Cal. App. 4th 1436 (1992) ....................6

*Riley v. Fitzgerald*,
178 Cal. App. 3d 871 (1986) ....................6

*Rosen v. State Farm Gen. Ins. Co.*,
30 Cal. 4th 1070 (2003) ....................6

*San Francisco Taxi Coal. v. City & Cnty. of San Francisco*,
979 F.3d 1220 (9th Cir. 2020) ....................6

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal. 4th 1 (1995) ....................6, 7

*Webb v. Trader Joe's Co.*,
999 F.3d 1196 (9th Cir. 2021) ....................5, 6

*Westoil Terminals Co. v. Indus. Indem. Co.*,
110 Cal. App. 4th 139 (2003) ....................7

**Statutes**

Cal. Civ. Code § 1639....................6

**Other Authorities**

Fed. R. Civ. P. 12(c) ....................5

Rule 12(b)(6)....................5

Plaintiffs REGENT INSURANCE COMPANY ("Regent"), STONINGTON INSURANCE COMPANY ("Stonington"), and QBE INSURANCE CORPORATION ("QBEIC" and together with Regent and Stonington, "Plaintiff Insurers"), by and through their attorneys, and for their Memorandum in Support of Motion for Judgment on the Pleadings, state as follows:

## I. INTRODUCTION

Plaintiff Insurers seek a declaratory judgment that they owe no coverage or defense to defendants ("Stone Source") under the subject insurance policies for 45 underlying civil actions. In those actions, countertop fabrication workers allege silicosis and other silica-related injuries caused by their inhalation of dust released when cutting or otherwise manipulating Stone Source's artificial stone products.

The parties' pleadings, including the subject policies, and the underlying complaints establish that the underlying actions fall squarely within the policies' "Silica or Silica-Related Dust Exclusions." Those exclusions specifically bar coverage for any injury arising "in whole or in part" from inhalation or ingestion of silica dust—the exact injuries alleged in the underlying actions.

Because the exclusions unambiguously preclude any potential for coverage of the underlying actions, Plaintiff Insurers respectfully request that the Court enter judgment declaring that Plaintiff Insurers owe no coverage or duty to defend to Stone Source for any of the underlying actions.

## II. PLEADED FACTS

### A. The Underlying Actions

Stone Source has tendered at least 45 state court lawsuits that have been filed against it, as well as other manufacturers, suppliers, distributors, importers, brokers, and contractors of industrial stone products, to Plaintiff Insurers for a defense and indemnity. (ECF No. 1, ¶ 28; ECF No. 1-1.) Claimants in each of those lawsuits allege that they suffered illness, injury, or death as a result of inhaling or ingesting silica and other hazardous substances emitted from Stone Source's and the other defendants'

stone products (the "Underlying Actions"). (*See* ECF No. 37, Request for Judicial Notice in Support of Motion for Judgment on the Pleadings ("RJN").)[1] Like the related case *Hanover Am. Ins. Co. v. Francini, Inc.*, the "underlying state actions are all substantially similar" and each allege that the "underlying plaintiffs suffer from silicosis and related conditions and consequential injuries because of their exposure to ***silica*** and ***silica-related dust*** while working with the underlying defendants' products." 2025 U.S. Dist. LEXIS 70996, at *4 (C.D. Cal. Mar. 27, 2025) (emphasis added).

As exemplified by the underlying *Castillo* Action, the underlying claimants purport to be among a growing number of stone workers who have been injured inhaling crystalline silica, which has long been known to be a constant, ever-present, and dangerous byproduct of the stone fabrication process:

- "Cutting, grinding, drilling, chipping, edging, and/or polishing (collectively, 'fabricating') stone products produces ***large amounts of respirable crystalline silica dust*** which stone fabrication workers inhale, typically causing chronic ***silicosis*** as well as lung cancer and various other ***silica***-related diseases." (ECF No. 1-10, ECF PageID #1170-71, ¶ 85 (emphasis added).)
- "[T]he fabrication of artificial stone generates ***massive amounts*** of ultrafine and nanosized crystalline silica particles that . . . are inhaled by fabricators and cause progressive massive fibrosis." (*Id.* at PageID #1354, ¶ 567 (emphasis added).)

---

[1] Plaintiff Insurers have concurrently filed their Request for Judicial Notice of the Underlying Actions that attaches the operative complaints, as well as an Appendix in Support of Motion for Judgment on the Pleadings, which identifies the allegations from those pleadings that are relevant to this motion. Due to the large number of Underlying Actions, Plaintiff Insurers will hereafter cite the Appendix of allegations, as well as the Complaint in the Underlying Action captioned *Antonio Lopez Castillo v. Alicante Stone Inc., et al.*, Los Angeles County Superior Court, Case No. 24STCV17052 (the "*Castillo* Action"), as a representative example of the other Underlying Actions. (*See* ECF No. 1-10; ECF No. 38, Appendix in Support of Motion for Judgment on the Pleadings ("App.").)

- "The biggest problem the stone industry faces is that artificial stone is the cause of a worldwide ***epidemic of accelerated silicosis*** among stone countertop fabricators." (*Id*. at PageID #1356-57, ¶ 571 (emphasis added).)
- "[E]xposure to respirable crystalline silica not only causes silicosis . . . , but also causes lung cancer." (*Id*. at PageID #1448-49, ¶ 832.)

Indeed, each of the Underlying Actions allege that the claimant "worked with inherently hazardous stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by the named Defendants," including Stone Source, and were "thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including quartz and cristobalite), metals . . . and volatile organic compounds from polymeric resins and other binders . . . emitted from these products." (ECF No. 1-10, PageID #1195, ¶ 100; ECF No. 38, App., Nos. 1-2.) They further allege that "[a]s a direct and proximate result of [their] exposure to silica, metals and other toxins within said stone products" they developed respiratory illnesses and diseases—namely, "silicosis." (ECF No. 1-10, PageID #1195-96, ¶¶ 101, 105.) Claimants maintain that "[e]ach toxin, including silica and metals, that entered [their] bod[ies were] a substantial factor in bringing about, prolonging, and aggravating [claimants'] silicosis and [their] other related and consequential injuries." (*Id*. at PageID #1539, 1542, 1553, 1580, ¶¶ 1087, 1107, 1142, 1230.)

**B. <u>The Insurance Policies</u>**

Regent issued a comprehensive insurance policy that includes commercial general liability bearing policy number CGA 1385591 for an initial policy period of August 1, 2021 to August 1, 2022. (ECF No. 1-2, PageID #38.) Stone Source was added as a named insured under this policy effective March 31, 2022. (*Id*. at PageID #112.) The policy was renewed on substantially similar terms for consecutive policy periods through August 1, 2025, with Stonington taking over as insurer beginning

August 1, 2023 (the "Primary Policy"). (*See generally* ECF Nos. 1-2, 1-4, 1-6, 1-8.)[2] Coverage A of the Primary Policy provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (ECF No. 1-2, PageID #52.)

This coverage is subject, however, to a "Silica Or Silica-Related Dust Exclusion" that provides that the insurance does not apply to "'Bodily injury' ***arising, in whole or in part***, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, 'silica' or 'silica-related dust.'" (*Id.* at PageID #78 (emphasis added).)[3] The exclusion defines "silica" as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds" and "silica-related dust" as "a mixture or combination of silica and other dust or particles." (*Id.*)

Regent also issued a commercial umbrella policy bearing policy number CUU 1385591 for an initial policy period of August 1, 2021 to August 1, 2022. (ECF No. 1-3, PageID #150.) Stone Source was added to this umbrella policy as a named insured by amendment effective March 31, 2022. (*Id.* at PageID #216.) This umbrella policy was renewed on substantially the same terms for consecutive policy periods that ran through August 1, 2025, with QBEIC taking over as insurer starting August 1, 2023 (the "Umbrella Policy"). (*See generally* ECF Nos. 1-3, 1-5, 1-7, 1-9.)[4]

The Umbrella Policy similarly provides coverage for "'bodily injury' . . . caused by an 'occurrence,'" which is also defined as "an accident." (ECF No. 1-3,

---

[2] Hereafter, where relevant terms are the same across all of the renewals of the Primary Policy, this memorandum will cite only to the copy of the Primary Policy issued for the initial policy period located at ECF No. 1-2.

[3] All of the subsequent renewals of the Primary Policy incorporate the same "Silica Or Silica-Related Dust Exclusion" endorsement. (ECF No. 1-4, PageID #269; ECF No. 1-6, PageID #457; ECF No. 1-8, PageID #799.)

[4] This memorandum will similarly cite only to the copy of the Umbrella Policy issued for the initial policy period located at ECF No. 1-3 where relevant terms are the same across all of the subsequent renewals.

PageID #159, #174.) It also incorporates a "Silica Or Silica-Related Dust Exclusion" endorsement that is substantially similar to the Primary Policy's silica exclusion. This exclusion provides, in pertinent part, that the umbrella coverage does not apply to "[a]ny liability of the insured ***arising, in whole or in part***, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, 'silica' or 'silica-related dust.'" (*Id*. at PageID #192 (emphasis added).)[5] The Umbrella Policy defines "silica" and "silica-related dust" in the same way as the Primary Policy. (*Id*.)

Whether or not the Underlying Actions trigger coverage under the Primary and Umbrella Policies in the first instance, the Silica Or Silica-Related Dust Exclusions contained in those policies completely eliminate any potential for coverage, and thus any obligation to defend Stone Source, for any of the underlying injuries. Accordingly, Plaintiff Insurers respectfully request that the Court grant this motion for judgment on the pleadings and enter declaratory judgment in their favor.

## III. STANDARDS

### A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for summary judgment are "functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (internal quotation marks omitted).

"[W]hen ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial

[5] All of the subsequent renewals of the Umbrella Policy incorporate this same "Silica Or Silica-Related Dust Exclusion" endorsement. (ECF No. 1-5, PageID #364; ECF No. 1-7, PageID #605; ECF No. 1-9, PageID #1044.)

notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)). A court may not look beyond the pleadings to resolve an issue. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment is "properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020).

**B. <u>Policy Interpretation</u>**

Insurance policy interpretation is governed by state law. In California, policy interpretation is a question of law to be evaluated by the court. *Northfield Ins. Co. v. Sandy's Place, LLC,* 530 F. Supp. 3d 952, 962 (E.D. Cal. 2021); *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) ("When determining whether a particular policy provides a potential for coverage and a duty to defend," California courts "are guided by the principle that interpretation of an insurance policy is a question of law.").[6]

"Insurance contracts are to be interpreted . . . in the same manner as any other contract, giving effect to the mutual intention of the parties." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 777 (2010). "Such intent is to be inferred, if possible, ***solely from the written provisions*** of the contract." *AIU Ins. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) (emphasis added); *accord* Cal. Civ. Code § 1639. "If the policy language is clear and explicit, it governs." *Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1074 (2003) (internal quotations omitted).

---

[6] California law likely applies given majority of the Underlying Actions and injuries alleged therein occurred in California, although Florida law may also be implicated because the Policies were initially issued in Florida. However, there is no material conflict between the laws of California and Florida concerning the applicability of a silica exclusion and, thus, there is "no need . . . to reach the conflict of law issue" for purposes of this Motion. *See Pittelman v. Pierce*, 6 Cal. App. 4th 1436, 1443 (2d Dist. 1992) (affirming summary judgment for defendants without deciding conflict of law issue); *see also Riley v. Fitzgerald*, 178 Cal. App. 3d 871, 875 (2d Dist. 1986) (finding that conflict of law analysis is necessary only where there is "true conflict of laws"); *see also Granada Ins. Co. v. A&J Luxury Group*, No. 50 2020-CA-013450, 2022 Fla. Cir. LEXIS 1336 (Fl. Cir. Ct. April 6, 2022) (holding that the same silica exclusion at issue here precluded a duty to defend underlying lawsuit alleging injuries "relating to exposure and inhalation of silica, dust, and irritants").

"Where an exclusion is clear and unambiguous, it is given its literal effect." *Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal. App. 4th 139, 146 (2nd Dist. 2003) (internal quotations omitted). Thus, "[c]overage is precluded when the exclusionary language is explicit." *Belmonte v. Emplrs Ins. Co.*, 83 Cal. App. 4th 430, 435 (4th Dist. 2000) (emphasis added). "Courts will not strain to create an ambiguity where none exists."[7] *Waller*, 11 Cal. 4th at 18-19; accord Hanover, 2025 U.S. Dist. LEXIS 70996 at *8; *Inns-by-the-Sea v. Cal. Mut.l Ins. Co.*, 71 Cal. App. 5th 688, 698 (4th Dist. 2021). Indeed, "[a]n insurer ordinarily is free to limit the risks it assumes, and [courts] do not rewrite any provision of any contract." *24th & Hoffman Investors, LLC v. Northfield Ins. Co.*, 82 Cal. App. 5th 825, 833 (1st Dist. 2022); *see also Gunderson Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1118 (1st Dist. 1995) ("An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected."); *Merrill Seeley, Inc. v. Admiral Ins. Co.*, 225 Cal. App. 3d 624, 630 (1990) ("Where the policy language is clear and unambiguous, the insured reasonably can expect only the coverage afforded by the plain language of the contract.").

**C. Duty to Defend**

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Ocean Towers Hous. Corp. v. Evanston Ins. Co.*, 772 F. App'x 459, 460 (9th Cir. 2019) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)). An insurer is determined to owe no duty to defend "if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*'" *Browne George Ross LLP v. Lexington Ins. Co.*, 138 F. Supp. 3d 1149, 1152 (C.D. Cal. 2012) (quoting *Montrose*, 6 Cal. 4th at 300); *see also Montrose*, 6 Cal. 4th at 297 ("[T]he insurer is not required to defend an action against the insured when

---

[7] Stone Source makes no allegations in its answer or affirmative defenses that the Policies, including the silica exclusions, are ambiguous.

the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from the policy.”). In a “mixed action” including both potentially covered and uncovered claims, “the insurer has a duty to defend the action in its entirety.” *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997). [W]here there is no duty to defend, there cannot be a duty to indemnify.” *Certain Underwriters at Lloyd’s of London v. Superior Ct.*, 24 Cal.4th 945, 958 (2001).

Applying these standards to the matter at bar, there is no question that all the injuries alleged in the Underlying Actions fall squarely within the Policies’ unambiguous silica exclusions. Accordingly, there is no potential for coverage and thus no duty to defend the Underlying Lawsuit under the Policies, and thus Plaintiff Insurers are entitled to judgment as a matter of law.

## IV. <u>ARGUMENT</u>

### A. <u>The Silica Or Silica-Related Dust Exclusions Unambiguously Bar Coverage for Injuries Arising Out of Silica or Silica-Related Dust Inhalation or Ingestion.</u>

The Silica Or Silica-Related Dust Exclusions contained in the Primary and Umbrella Policies are simple, straightforward, and unambiguous. They provide that the insurance does not apply to liability for bodily injury “arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, ‘silica’ or ‘silica-related dust.’” (ECF No. 1, ¶ 18; ECF No. 1-2, PageID #78.) The form contained in the Umbrella Policy is even broader, also precluding coverage for liability arising from “contact with, exposure to, existence of, or presence of, ‘silica’ or ‘silica-related dust.” (ECF No. 11, ¶ 24; ECF No. 11-3, PageID #192.) Both policies define “Silica” as “silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds” and “Silica-related dust” as “a mixture or combination of silica and other dust or particles.” (ECF No. 1-2, PageID #78; ECF No. 1-3, PageID #192.) Stone Source does not dispute this. (ECF No. 20, ¶¶ 18, 24.)

By their plain terms, the policies' Silica Or Silica-Related Dust Exclusions provide that Stone Source is not entitled to coverage for any bodily injury arising from silica. This is true regardless of the physical form the injurious silica takes ("silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds"). It is also true regardless of the relative degree to which inhalation or ingestion of silica or silica-related dust causes the injury and whether or not there are alleged concurrent causes.

Indeed, the exclusions' terms clearly account for a wide range of relative causation scenarios:

- First, the exclusions apply to injuries caused ***solely by silica*** because they provide that there is no coverage for injuries "arising, in whole . . . out of the . . . inhalation of, or ingestion of, 'silica.'"
- Second, the exclusions apply to injuries caused ***solely by a mixture of silica and other dusts or particles*** because they provide that there is no coverage for injuries "arising, in whole . . . out of the . . . inhalation of, or ingestion of, 'silica-related dust,'" which is defined as "a mixture of silica and other dust or particles."
- Third, the exclusions apply to injuries caused ***in part by silica and in other part(s) by any other cause(s)*** because they provide that there is no coverage for injuries "arising . . . in part . . . out of the . . . inhalation of, or ingestion of, 'silica.'"
- Fourth, the exclusions apply to injuries caused ***in part by a mixture that contains silica and other dusts or particles and in other part(s) by some other cause(s)*** because they provide that there is no coverage for injuries "arising . . . in part . . . out of the . . . inhalation of, or ingestion of, 'silica-related dust,'" which is defined as "a mixture of silica and other dust or particles."

The latter scenario of course contemplates the lowest relative silica causation and

indicates that the exclusions apply even when silica is merely a component of one cause (*i.e.*, "Silica-related dust") among multiple other causes.

Ultimately, the Silica Or Silica-Related Dust Exclusions bar coverage for injuries that are caused, even in the slightest part, by silica or a substance containing silica. Indeed, courts in California and within the Ninth Circuit "have consistently given a broad interpretation to the clause 'arising from' in an insurance contract," including when used in policy exclusions. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017); *Medill v. Westport Ins. Corp.*, 143 Cal.App.4th 819, 830 (2006) ("Case law . . . grants a broad definition of the phrase 'arising out of'" as used in insurance policy exclusions"). That language "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *CMB Devs. Inc. v. Associated Indus. Ins. Co.*, No. 2:19-cv-09973-SVW-RAO, 2021 U.S. Dist. LEXIS 148897, at *6 (C.D. Cal. July 9, 2021) (quoting *Truck Ins. Exch. v. AMCO Ins. Co.*, 56 Cal. App. 5th 619, 630 (2020)); *see also Burlington Ins. Co. v. Alan*, No. C 12-03372 SI, 2013 U.S. Dist. LEXIS 61835, at *11 (N.D. Cal. Apr. 30, 2013) ("[T]he term 'arising out of' in an exclusion provision of an insurance policy has been interpreted by California courts to be 'a broad concept requiring only a 'slight connection' or an 'incidental relationship' between the injury and the excluded risk.'").

The silica exclusions therefore "broadly excludes from coverage claims with 'a minimal causal connection or incidental relationship to'" the excluded risk—*i.e.*, inhalation of or exposure to silica or silica-containing dust. *Los Angeles Lakers*, 869 F.3d at 801 (quoting *Crown Capital Sec., L.P. v. Endurance Am. Specialty Ins.*, 235 Cal. App. 4th 122, 1286 (2015)). As such, they clearly encompass the injuries alleged in the Underlying Actions, which are all alleged to have been caused at least in part by the claimants' inhalation or ingestion of crystalline silica.

**B. Applying the Silica Or Silica-Related Dust Exclusions to the Underlying Actions, There Is No Potential For Coverage and Thus Plaintiff Insurers Owe No Duty to Defend.**

The harm alleged in the Underlying Actions falls squarely within the Primary and Umbrella Policies' Silica Or Silica-Related Dust Exclusions, eliminating any potential for coverage and thus any duty to defend. As discussed above, at minimum, the Silica Or Silica-Related Dust Exclusions bar coverage for injuries that are caused at least in some small part by the inhalation or ingestion of a dust or set of particles that includes silica in any of its forms and in other parts by other causes. The Underlying Actions easily clear this threshold as they allege injuries caused in substantially larger part by silica and dust containing silica.

Specifically, the underlying claimants allege that they inhaled "stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica" that was emitted during their work manipulating underlying defendants' stone products, including Stone Source's stone products. (ECF No. 1-10, PageID #1195-96, ¶¶ 100-01, 105; ECF No. 38, App., Nos. 1-2.) They allege that this "exposure to silica, metals and other toxins within" Stone Source's stone products was the direct and proximate cause of their silicosis and other silica-related injuries. (*Id.*) Silica was allegedly "a ***substantial factor*** in bringing about, prolonging, and aggravating [claimants'] silicosis and [] related and consequential injuries." (*Id.* at PageID #1536, 1539, 1542, 1553, 1580, ¶¶ 1068-70, 1087, 1107, 1142, 1230 (emphasis added).)

In other words, the underlying claimants' theory of liability against Stone Source is that inhalation of the crystalline silica that is ubiquitous in the Stone Source products caused them to suffer from silicosis and other silica-related injuries. *See Francini, Inc.*, 2025 U.S. Dist. LEXIS 70996, at *13 (holding Silica Or Silica-Related Dust Exclusion barred coverage where allegations against particular insured "specifically concern[ed] the crystalline silica produced by" the insured, "[a]ll of the

allegations against [that insured were] specific to silica or silica-related dust," and recovery sought against insured allegedly arose from silica exposure). If there is ultimately liability against Stone Source, it will be due to a factual finding that the claimants' injuries or deaths were caused at least in part by silica or silica-containing dust released from Stone Source's stone products. As such, the Underlying Actions undoubtably trigger the Silica Or Silica-Related Dust Exclusions, which preclude any potential for coverage for those actions.

Further, the underlying claimants' allegations that their injuries also resulted from other substances that are concurrently emitted when the defendants' stone products are manipulated, like metals and volatile organic compounds ("VOCs"), do not affect the applicability of these exclusions to the Underlying Actions. As outlined above, the exclusions unambiguously apply to any injury that is at all caused by silica or silica-related dust, regardless of whether those substances are the sole cause or one of many causes. The exclusions' careful accounting for the entire causation range of silica inhalation indicates a clear intention to preclude coverage for any silica injuries—even if those injuries were brought about by other contributing causes.

Whether or not the emissions from Stone Source's products that the underlying plaintiffs allegedly inhaled or were exposed to contain metals, VOCs, or other hazardous substances is irrelevant because the subject exclusions apply in each potential scenario where silica is present. Pursuant to their clear terms, these exclusions bar coverage for the Underlying Actions because the claimants allege that crystalline silica was a component, indeed the primary component, of the stone product emissions they inhaled and thereby allegedly developed silicosis and other silica-related injuries. *Francini, Inc.*, 2025 U.S. Dist. LEXIS 70996, at *10-13 (rejecting argument this ***exact same*** exclusion did not apply where underlying plaintiffs alleged injuries caused by silica and other harmful substances). As such, there is no potential for coverage and Plaintiff Insurers do not owe Stone Source a defense in the Underlying Actions.

## V. CONCLUSION

For the aforementioned reasons, Plaintiff Insurers respectfully request that the Court grant their motion for judgment on the pleadings and enter judgment in their favor and against Stone Source.

Dated: December 8, 2025

HINSHAW & CULBERTSON LLP

By: */s/ John DeLascio*
John DeLascio (*Pro Hac Vice*)
David T. Hayek
Attorneys for Plaintiffs
REGENT INSURANCE COMPANY, GENERAL CASUALTY COMPANY OF WISCONSIN and QBE INSURANCE CORPORATION

# <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on December 8, 2025, a true and correct copy of the foregoing **Plaintiffs' Memorandum in Support of Motion for Judgment on the Pleadings** was electronically filed with the Cleark of the U.S. District Court via the CM/ECF system, which will provide notice to all counsel of record.

*/s/ Mackenzie Paterson*