William S. Bennett, Esq. (SBN 315537)
wbennett@sdvlaw.com
Daniel A. Thompson, Esq. (SBN 276805)
DThompson@sdvlaw.com
**SAXE DOERNBERGER & VITA, P.C.**
One Better World Circle, Suite 300
Temecula, CA 92590
Ph: (951) 365-3145; Fax: (203) 287-8847

Attorneys for Defendant, STONE SOURCE LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

REGENT INSURANCE COMPANY; STONINGTON INSURANCE COMPANY; QBE INSURANCE CORPORATION,

Plaintiffs,

vs.

STONE SOURCE LLC; DOES 1-10 inclusive,

Defendants.

Case No.: 2:25-cv-06702-MRA-MAA

**DEFENDANT STONE SOURCE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 2
A. The Allegations of Insurers' Complaint .......... 2
B. Allegations of the Underlying Actions and the *Castillo* Action .......... 3
III. LEGAL ANALYSIS .......... 5
A. Standard of Review .......... 5
B. Stone Source's Answer raises facts that prevent the Insurers from obtaining judgment on the pleadings. .......... 6
C. The "Silica Exclusion" Does Not Bar Coverage for the Underlying Lawsuits .......... 8
1. The Underlying Actions Do Not Allege That All Stone Products Manufactured by Stone Source Contain Silica. .......... 9
2. The Insurers Have Not Met Their Burden of Demonstrating that the Silica Exclusion Unambiguously Applies to Polysilicate Stones. .......... 11
3. Insurers' Complaint and the Underlying Actions Allege Bodily Injury Caused by Non-Silica Materials Including Metal, VOCs, Styrene, Phthalic Anhydride, Benzene, Ethylbenzene, Toluene and "Other Toxins" .......... 12
4. Where two independent risks jointly cause an injury, the insurer is liable so long as one of the risks is covered by the policy. .......... 13
IV. CONCLUSION .......... 14

## CASES


Am. Zurich Ins. Co. v. James N. Gray. Co., 2014 WL 11430928, at *4 (C.D. Cal. July 25, 2014) ..... 10

*Antonio Lopez Castillo v. Alicante Stone Inc.*, et al., Los Angeles County Superior Court, Case No. 24STCV17052 ..... 1

Atlantic Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1039 (2002) ..... 13

Atlantic Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1039 (2002). ..... 1

Atlantic, 100 Cal. App. 4th at 1039 ..... 13

Buss v. Super. Ct., 16 Cal. 4th 35 (1997) ..... 10

*Castillo* Action, ECF Doc 38 Pg. 50 ..... 9

*Castillo* Action, ECF Doc 38, ¶ 104 ..... 12

*Castillo* Action, ECF Doc 38, ¶ 1107 ..... 9

*Castillo* Action, ECF Doc 38, ¶ 86-89, 100, 1067-1069, emphasis added ..... 5

*Castillo* Action, ECF Doc 38; 50:27-51:9 ..... 3

Complaint ECF Doc 1 ¶ 1 ..... 2

Complaint ECF Doc 1, ¶ 1, 87, 89 ..... 12

Complaint ECF Doc. 1, ¶ 86, emphasis added ..... 2

Complaint ECF Doc. 1, ¶ 87, emphasis added ..... 2

ECF Doc 1, Pg. 2 ¶ 1, 86-87 ..... 1

FED. R. CIV. P. 12(c) ..... 5

FED. R. EVID. 201(b) ..... 7

Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989) ..... 6

Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 n.15 (1966) ..... 13

Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir.1990) ..... 6

Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993) ..... 8

Mass. Inst. of Tech. v. Rsch., Dev. and Tech. Emps. Union, 980 F. Supp. 2d 8 (D. Mass. 2013) ..... 5
Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (1993) (quoting Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966)) ..... 8
Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 300 (1993) ..... 13
Montrose Chem. Corp. v. Superior Ct., 6 Cal. 4th 287, 295 (1993) (quoting Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966)) ..... 1
Motion ECF Doc 36, Pg. 3, Line 7 ..... 1
Sanberg Decl. ¶ 4 ..... 11
Sandberg Decl. Ex. G ..... 3
See *Castillo* Action, ECF Doc 38 ¶ 87 ..... 13
See *Castillo* Action, ECF Ex. 38 ¶ 81 ..... 11
See Insurer RJN Ex. 7 Pg. 80 ¶ 117, Ex. 21 Pg. 41 ¶ 100 ..... 10
See Merriam Webster Dictionary ..... 13
See Sandberg Decl. Ex. G ..... 1
See Stone Source RFN Ex. B ..... 9
See Stone Source RJN Ex. C, D ..... 12
State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94, 97 (1973) ..... 14
Stone Source RJN No. 1, Exs A, B ..... 7
Stone Source RJN No. 2, Ex C ..... 7
Stone Source RJN No. 3, Exs D, E ..... 7
Stone Source RJN No. 4, Ex F ..... 7
U.S. v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) ..... 7
U.S. v. Teng Jiao Zhou, 815 F.3d 639 (9th Cir. 2016) ..... 5
Villanueva v. Biter, No. 1:11–cv–01050–AWI–SAB (PC), 2017 WL 6040326, at *3 (E.D. Cal. Dec. 6, 2017) ..... 7
Viner v. Sweet, 30 Cal. 4th 1232, 1240 (2003) ..... 14
Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19 (1995) ..... 8

## I. INTRODUCTION

Defendant Stone Source LLC ("Stone Source") respectfully submits this Opposition to the Motion for Judgment on the Pleadings filed by Plaintiffs Regent Insurance Company, Stonington Insurance Company and QBE Insurance Corporation (collectively, "Insurers").

A liability insurer "must defend a suit which potentially seeks damages within the coverage of the policy." Montrose Chem. Corp. v. Superior Ct., 6 Cal. 4th 287, 295 (1993) (quoting Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966)). Insurers have not met, nor can they meet through pleadings alone, their burden of proving, through conclusive evidence, that the Silica Exclusion applies in "all possible worlds." Atlantic Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1039 (2002).

The product liability lawsuits at issue (the "Underlying Actions") extensively allege exposure to non-silica stones, non-silica related metals, "other" toxins, volatile organic compounds ("VOCs"), styrene, phthalic anhydride, benzene, ethylbenzene, toluene. (See Sandberg Decl. Ex. G). Insurers' own Complaint in this action acknowledges there was exposure to metals and "other materials." (ECF Doc 1, Pg. 2 ¶ 1, 86-87). These alleged exposures do not implicate the language of the silica exclusion the Insurers rely on.

In support of their Motion, Insurers quote from only one of the Underlying Actions, *Antonio Lopez Castillo v. Alicante Stone Inc.*, et al., Los Angeles County Superior Court, Case No. 24STCV17052 (the "*Castillo* Action"). Citing the *Castillo* Action, the Motion states, "Claimants maintain that '[e]ach toxin, including silica and metals, that entered [their] bod[ies, was] a substantial factor in bringing about, prolonging, and aggravating [claimants'] silicosis and [their] other related and consequential injuries." (Id. at PageID #1539, 1542, 1553, 1580, ¶¶ 1087, 1107, 1142, 1230.)" (Motion ECF Doc 36, Pg. 3, Line 7). Insurers' own Motion acknowledges that "each toxin" – separate from silica and including metals – was a substantial factor in causing the injuries. Insurers offer no basis to "connect the dots" between the silica exclusion and these numerous other alleged toxins, because there is nothing in the pleadings to connect those dots. This leave Insurers to offer

overgeneralized arguments that ignore extensive scientific and technical considerations, which overwhelmingly do not support the overbroad application of the exclusion Insurers urge in their motion.

As more fully established herein, these other materials do not satisfy the definition of "silica" or "silica-related dust." Accordingly, Insurers are unable to meet their burden of proving that an exclusion applies to each individual Underlying Action. Therefore, the Court should deny Insurers' motion in its entirety.

## II. FACTUAL BACKGROUND

### A. The Allegations of Insurers' Complaint

Insurers' Complaint alleges, "Defendants have been or may be sued by a number of individuals, estates, and/or trusts who seek damages against Defendants for alleged illness, injuries and, in some cases, deaths of individuals, and damages arising from the alleged use of products designed, manufactured, marketed, and sold by Defendants that allegedly contain hazardous materials (the 'Underlying Actions')." (Complaint ECF Doc 1 ¶ 1)

In explaining stone slab products, Insurers' Complaint alleges, "[f]abrication workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are **not only** exposed to high concentrations of respirable crystalline silica, **but are also exposed to other toxic substances** in artificial stone, including **metals used as pigments and polymeric resins as binders.**" (Complaint ECF Doc. 1, ¶ 86, emphasis added).

Insurers' Complaint further alleges, "**In addition to** crystalline silica, pulmonary fibrosis (scarring of the lung tissue) is caused by many **metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium**. Some of these metals also cause an immunologic lung disease called hypersensitivity pneumonitis characterized by granulomas in lung tissue that also causes pulmonary fibrosis." (Complaint ECF Doc. 1, ¶ 87, emphasis added).

Even though Insurers label the underlying lawsuits as "Silica Lawsuits," Insurers'

own Complaint alleges that the victims were exposed to various other materials sourced from non-silica stones and additionally suffered from conditions and diseases that do not require silica exposure. Although Insurers make the unsupported logical leap that these other metals were accompanied with Silica at the times the underlying claimants were exposed, the pleadings do not support this leap, and information this Court can judicially notice directly contradicts it.

### B. Allegations of the Underlying Actions and the *Castillo* Action

Generally, each of the Underlying Actions alleges claims for Negligence, Products Liability – Failure to Warn, Products Liability – Design Defect, Fraudulent Concealment, Breach of Implied Warranties. In addition, twenty-six of the Underlying Actions allege Loss of Consortium, a bodily injury claim made by the spouse of the alleged victim, who had no exposure to silica.

For the Court's benefit, Stone Source has prepared an appendix citing each allegation regarding the inhalation or ingestion of other materials that are unrelated to silica, including metals, "other toxins," and VOCs, which are specifically identified in the Underlying Actions as styrene, phthalic anhydride, benzene, ethylbenzene, and toluene. (Sandberg Decl. Ex. G).

The *Castillo* Action alleges that Stone Source provided the following stones: Basalt, Engineered Stone, Granite, Limestone, Marble, Onyx, Porcelain, Quartz, Quartzite, Slate, and Travertine. (*Castillo* Action, ECF Doc 38; 50:27-51:9).

Additionally, the relevant paragraphs of the *Castillo* Action alleging exposure to other non-silica substances are as follows:

> 86. Fabrication workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are **not only** exposed to high concentrations of respirable crystalline silica, **but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders.**
>
> 87. **In addition to** crystalline silica, pulmonary fibrosis (scarring of the lung

tissue) is caused by **many metals** that are constituents of artificial stone, including **aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium**. Some of these metals also cause an immunologic lung disease called hypersensitivity pneumonitis characterized by granulomas in lung tissue that also causes pulmonary fibrosis.

88. Fabricating artificial stone products also produces **volatile organic compounds (VOCs)**, the predominant species being **styrene**, but also including **phthalic anhydride, benzene, ethylbenzene, and toluene**. **Styrene** and **phthalic anhydride** are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis.

89. Workers fabricating artificial stone products often develop progressive massive fibrosis due to high concentrations of crystalline silica and **other toxic constituents** of artificial stone.

…

100. Throughout the course of his work, Plaintiff, ANTONIO LOPEZ CASTILLO, worked with inherently hazardous stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by the named Defendants and Does 1-100. Plaintiff, ANTONIO LOPEZ CASTILLO, was thereby exposed to and inhaled stone dust containing silica and **other toxins** and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including quartz and cristobalite), **metals** (including **aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium**) and **volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene)** emitted from these products.

...

1067. Plaintiff, ANTONIO LOPEZ CASTILLO, was exposed to each of Defendants' products, including those products manufactured, distributed, contracted, brokered and supplied by Doe Defendants as alleged above, and to silica, **metals and other toxins** contained therein and released therefrom as alleged above.

1068. As a result of Plaintiff, ANTONIO LOPEZ CASTILLO's exposure to each of Defendants' stone products, silica, **metals and other toxins** entered Plaintiff ANTONIO LOPEZ CASTILLO's body and caused Plaintiff to suffer from specific illnesses, to wit, silicosis and related medical conditions, as set forth in more detail herein.

1069. Each of Defendants' stone products contained silica, **toxic metals and other fibrogenic substances**, that entered Plaintiff, ANTONIO LOPEZ CASTILLO's body and were substantial factors in causing, prolonging, and aggravating his silicosis and his related and consequential injuries.

(*Castillo* Action, ECF Doc 38, ¶ 86-89, 100, 1067-1069, emphasis added)

## III. LEGAL ANALYSIS

### A. Standard of Review

A motion for judgment on the pleadings is a motion for judgment on the merits, which should be granted only if no material issue of fact remains to be resolved and the movant establishes their entitlement to judgment as a matter of law. FED. R. CIV. P. 12(c); U.S. v. Teng Jiao Zhou, 815 F.3d 639 (9th Cir. 2016).

To succeed with its motion for judgment on the pleadings and attain declaratory judgment on the pleadings, the plaintiff must include in its complaint enough factual allegations to raise a right to relief above the speculative level. Mass. Inst. of Tech. v. Rsch., Dev. and Tech. Emps. Union, 980 F. Supp. 2d 8 (D. Mass. 2013). "For the purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." Hal

Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir.1990).

**B. Stone Source's Answer raises facts that prevent the Insurers from obtaining judgment on the pleadings.**

Stone Source's Answer alleges facts and issues of law regarding the nature of the product sold by Stone Source, which prevent application of the Silica Exclusion on which the Insurers rely.

A motion for judgment on the pleadings cannot be granted if the answer raises even a single fact or affirmative defense that, if true, would defeat recovery. Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

In addressing Insurers' primary argument regarding Silica and Pollution, Defendant's Second Affirmative Defense for Breach of Contract states:

> "Defendant alleges that the Insurers breached their Duty to Defend under the Policies. There is a legal obligation for an insurer to provide a defense to an insured under a liability policy of insurance where a claim against the insured even only alleges facts that suggest a mere possibility of coverage. The underlying Lawsuits allege that the underlying plaintiffs suffered bodily injury by "other toxins" and "carcinogens" from stone products such as marble, which contains, in many circumstances, no silica. To the extent the Insurers rely on exclusions in the Policies based on the presence of Silica to deny coverage, and to the extent such exclusions apply to the allegations of any of the underlying complaints, allegations by the underlying plaintiffs that their claimed injuries arose out of exposure to rock containing minimal or no silica prevent the Insurers' reliance on that exclusion with respect to their duty to defend." (ECF Doc 20, Pg. 14, Line 2).

Stone Source's Answer was concurrently filed with a Request for Judicial Notice, with articles from reputable sources establishing the following:

1) Calcium-based stones, which include limestone and certain varieties of

marble (e.g., calcite, dolomite, and onyx) contain little or no silica; (Stone Source RJN No. 1, Exs A, B);

2) VOCs are potentially hazardous compounds that are emitted as gases "by a wide array of products numbering in the thousands[,]" including glues and adhesives (Stone Source RJN No. 2, Ex C);

3) Exposure to VOCs, such as breathing them in, can cause negative health effects, including cancer (Stone Source RJN No. 3, Exs D, E); and

4) The preparation of certain types of marble products leads to the release of VOCs (Stone Source RJN No. 4, Ex F).

Under Federal Rule of Evidence 201(b), courts may take judicial notice of adjudicative facts that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." FED. R. EVID. 201(b). "Courts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" U.S. v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003); Villanueva v. Biter, No. 1:11–cv–01050–AWI–SAB (PC), 2017 WL 6040326, at *3 (E.D. Cal. Dec. 6, 2017) ("The Court's authority includes taking judicial notice of government reports.").

Stone Source's Answer and accompanying Request for Judicial Notice, alongside the clear allegations in the Underlying Action, establish that Stone Source alleged it provided stone products (i.e., marble or anthracite) that may have includes zero silica content. As defined below, the "Silica Exclusion" does not apply to stones which contain zero silica compounds. To the extent that the Insurers allege that these stones provided by Stone Source did contain silica, that is their burden of proof. No such evidence exists or has been presented by the Insurers. Therefore, they clearly cannot meet their burden of proof to assert the exclusion and there is a genuine dispute of material fact that precludes granting the Insurers' Motion for Judgment on the Pleadings.

Stone Source's Answer raises facts and an affirmative defense which, if true, would defeat recovery. The Insurers, meanwhile, have not made close to a sufficient showing that the allegations of exposure to other toxins than Silica were contemporaneous with

exposure to Silica or, especially with respect to those stones that either do not contain Silica or often do not contain Silica, that those stones gave rise to Silica exposure at all. Therefore, judgment on the pleadings is inappropriate and the motion must be denied.

**C. The "Silica Exclusion" Does Not Bar Coverage for the Underlying Lawsuits**

Based purely on the face of the Insurers' Complaint, the Insurers are unable to establish that the "Silica Exclusion" bars Stone Source's entitlement to a defense. Coupled with the information in Stone Source's Request for Judicial Notice and the allegations of Stone Source's Answer, the deficiencies in their motion are obvious.

A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity and "must defend a suit which potentially seeks damages within the coverage of the policy." Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (1993) (quoting Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966)). "[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Thus, courts initially determine whether there is a duty to defend "by comparing the allegations of the complaint with the terms of the policy." Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19 (1995).

The allegations of the Underlying Actions are brought against dozens of defendants, who are alleged to have been involved in the manufacture or supply of various stone products. The majority of the complaints in the Underlying Actions are over 400 pages in length and contain a verbose history of artificial stone and fibrosis. As relevant here, the "Silica or Silica-Related Dust" Exclusion (herein, "Silica Exclusion") provides, in part:

> This insurance does not apply to:
>
> **Silica Or Silica-Related Dust**
>
> …
>
> b. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust"

…

"Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

"Silica-related dust" means a mixture of combination of silica and other dust or particles. (CG 21 96 03 05)

However, the allegations against Stone Source specifically allege injuries, such as lung damage, cancer, and death, as a direct result from exposure to calcium carbonate-based stones, such as marble or travertine, and other artificial stones with little or no silica content, such as "marble agglomerate." (See Stone Source RFN Ex. B)

The *Castillo* Action alleges that "[e]ach toxin, including silica and metals, that entered [Plaintiff's body] was a substantial factor in bringing about, prolonging, and aggravating [Plaintiff's] silicosis and his related and consequential injuries[.]" Each of the Underlying Actions alleges that stones containing little or no silica were a proximate cause of injuries. (*Castillo* Action, ECF Doc 38, ¶ 1107). Accordingly, Insurers' own example Underlying Action specifically alleges that stones containing little or no silica caused and/or contributed to the alleged bodily injuries suffered by the underlying plaintiff.

**1. The Underlying Actions Do Not Allege That All Stone Products Manufactured by Stone Source Contain Silica.**

Stone Source is not alleged to have been an employer of any of the claimants in the Underlying Actions. Rather, the Underlying Actions allege that Stone Source is the manufacturer/supplier of various stones of various origins, some of which demonstrably do not contain silica. For example, the *Castillo* Action alleges that Stone Source is the manufacturer/supplier of "Basalt, Engineered Stone, Granite, Limestone, Marble, Onyx, Porcelain, Quartz, Quartzite, Slate, Travertine." (*Castillo* Action, ECF Doc 38 Pg. 50) At

least two of the Underlying Actions allege that Stone Source specifically manufactured marble agglomerate. (See Insurer RJN Ex. 7 Pg. 80 ¶ 117, Ex. 21 Pg. 41 ¶ 100)[1]

As set forth in Stone Source's supporting Request for Judicial Notice, calcium-based stones such as limestone, marble, and travertine have little or no silica. (Stone Source RJN Ex. B) It is not sufficient that the Underlying Actions generally allege the involvement of silica as a potential source of harm. Am. Zurich Ins. Co. v. James N. Gray. Co., 2014 WL 11430928, at *4 (C.D. Cal. July 25, 2014) ("To interpret the Silica Exclusion Endorsement to preclude coverage even when it causes harm with dozens of other chemicals [ ] would wipe out an enormous swatch of CGL protections . . ."). Rather, where there are allegations that Stone Source provided surfaces, which are scientifically known to contain little or no silica, the Insurers must prove that the surfaces provided to these underlying plaintiffs in fact did contain Silica. Even to the extent the Insurers are ultimately able to prove one or more of the underlying plaintiffs were exposed to silica from a product provided by Stone Source, that would only relieve them of their duty to defend with respect to that one plaintiff if that one plaintiff was only exposed to stone products containing silica. Exposure to a single stone product from Stone Source that did not contain silica creates a "mixed" action, which the Insurers are required to defend in their entirety. Buss v. Super. Ct., 16 Cal. 4th 35 (1997).

To the extent that the Underlying Actions allege silica-free stones were provided by Stone Source, which they each do, the outstanding question of fact as to what stone products Stone Source provided to each underlying plaintiff's employer, and which of the stone products each underlying plaintiff worked on and was exposed to during their employment, precludes the Insurers' motion. Of course, in a motion for judgment on the pleadings, this Court does not have the opportunity to observe evidence developed through discovery. Stone Source anticipates discovery will show that, although there is a mix of

[1] For those Underlying Actions that do not name Stone Source in the body of the complaint, the amendments that name Stone Source as a doe defendant list the stone products that Stone Source allegedly manufactured.

stones that Stone Source is alleged to have produced, the vast majority of the stones it produced were of the kinds containing little to no silica (i.e., marble). (Sanberg Decl. ¶ 4) While all of the Insurers' motions for judgment on the pleadings filed against the common defendants to the underlying cases appear improper, the motion here is particularly so, given Stone Source's specific proclivity towards provision of stone surfaces with little to no silica content.

Accordingly, as the Silica Exclusion plainly does not apply to nearly half of the type of stone products alleged to have been produced by Stone Source, and the Insurers have done nothing to establish which underlying plaintiffs were exposed to which stones, the Insurers' motion must fail, and Insurers' must defend Stone Source in the Underlying Actions.

**2. The Insurers Have Not Met Their Burden of Demonstrating that the Silica Exclusion Unambiguously Applies to Polysilicate Stones.**

The Insurers have also failed to adequately demonstrate that, as a matter of law, the Silica Exclusion applies to polysilicate stones. Accordingly, it is premature to grant the Insurers' motion for judgment on the pleadings while there are outstanding issues of law.

There is an unresolved issue of law whether stones like serpentine, one of the stone products identified in the Underlying Action, are within the scope of the silica exclusion. (See *Castillo* Action, ECF Ex. 38 ¶ 81) Serpentine is classified as a phyllosilicate mineral, which means it has a chemical composition of $X_3Si_2O_5(OH)_4$, with X denoting certain elemental metals, like magnesium and iron. A silica particle, such as silica dioxide, on the other hand, is defined by the chemical composition $SiO_2$. The differing chemical composition of serpentine means it is not silica dioxide, a silica particle, or a silica compound, one of which is required to trigger the Silica Exclusion.[2]

While phyllosilicate contains the word "silicate" in its name, phyllosilicate minerals have different physical and chemical properties than silicate minerals like silica dioxide.

[2] https://www2.tulane.edu/~sanelson/eens211/phyllosilicates.pdf

Accordingly, there is a question of law as to whether the terms "silica particles" and "silica compounds," as found in the Silica Exclusion, apply to <u>any</u> compound that simply contains a silica atom.

Because there is a meaningful physical and chemical difference between phyllosilicate minerals and silicate minerals, and because the Insurers fail to address how the former is excluded by the Silica Exclusion, the Court should not grant the Insurers' Motion for Judgment on the Pleadings on these separate grounds.

**3. Insurers' Complaint and the Underlying Actions Allege Bodily Injury Caused by Non-Silica Materials Including Metal, VOCs, Styrene, Phthalic Anhydride, Benzene, Ethylbenzene, Toluene and "Other Toxins"**

The Insurers' Complaint expressly alleges that the plaintiffs in the Underlying Actions were injured by materials other than "Silica," having inhaled or ingested marble dust (calcium carbonate dust) and anthracite (what is effectively pure coal dust), and having been exposed to "metals used as pigments and polymeric resins as binders" that cause various injuries, including pulmonary fibrosis. (Complaint ECF Doc 1, ¶ 1, 87, 89.) As identified in the appendix marked Exhibit G, the Underlying Actions allege exposure to non-silica sources including metal, VOCs, styrene, phthalic anhydride, benzene, ethylbenzene, toluene and "other toxins."

As evidenced in the *Castillo Action*, the Underlying Actions allege that "[a]s a result of his use of, and exposure to, the stone products of Defendants and Does 1-100 throughout his work in Southern California, Plaintiff, ANTONIO LOPEZ CASTILLO, inhaled [metal dust and other toxins] from said products." (*Castillo* Action, ECF Doc 38, ¶ 104).

The VOCs alleged to have been encountered, such as styrene, phthalic anhydride, benzene, ethylbenzene, and toluene cannot fit the definition of "Silica" or "Silica-related dust." As the United States Environmental Protection Agency has explained, VOCs are gases that are emitted from certain solids or liquids. (<u>See</u> Stone Source RJN Ex. C, D). Because VOCs are gases and not solid matter, they are not dust or particles of the sort that

can combine with silica to form "silica-related dust." Id.

The Underlying Actions also allege exposure to "other toxins." While these toxins are not identified by name, the use of the word "other" indicates something that is "distinct from that or those first mentioned or implied." (See Merriam Webster Dictionary) Similarly, the Underlying Actions use the phrase "In addition to crystalline silica," indicating that the exposure came from elements separate from silica. (See *Castillo* Action, ECF Doc 38 ¶ 87).

The Insurers bear the burden of proving that each and every injury alleged in the Underlying Actions is excluded. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 300 (1993); Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 n.15 (1966); Atlantic Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1039 (2002). An insurer "has the burden of proving, through conclusive evidence, that the [Silica Exclusion] applies in all possible worlds." Atlantic, 100 Cal. App. 4th at 1039.

It is extraordinarily unlikely that the Insurers can meet this burden at any stage, even assuming completion of discovery, which will require them to prove that every one of the discrete injuries alleged in the Underlying Actions arose out of exposure to "silica" or "silica-related dust." As the Underlying Actions specifically allege that Stone Source caused injury through stones containing little or no silica, the Silica Exclusion cannot apply in "all possible worlds" (i.e., where Stone Source is alleged to have provided marble slabs, artificial marble stones, and phyllosilicate stones). Id. Thus, the Insurers are not discharged from their broad duty to defend.

**4. Where two independent risks jointly cause an injury, the insurer is liable so long as one of the risks is covered by the policy.**

Even assuming the Insurers could establish, through evidence sufficient to satisfy their burden of proof, that silica provided by Stone Source in fact contributed to an underlying plaintiff's injury(ies), that finding would still be insufficient to absolve the Insurers' duty to defend.

Where two independent risks jointly cause an injury, the insurer is liable so long as

one of the risks is covered by the policy. State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal. 3d 94, 97 (1973). Concurrent independent causes "are multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm." Viner v. Sweet, 30 Cal. 4th 1232, 1240 (2003).

Here, each metal, VOC, styrene, phthalic anhydride, benzene, ethylbenzene, toluene, non-silica stone type, and "other toxins" alleged to have existed in non-silica stones may have individually, or collectively, caused or aggravated the alleged injuries independently of any silica or silica-related dust. As such, the Silica Exclusion does not apply to eliminate the duty to defend while the possibility remains that in the Underlying Actions, non-silica materials remain a potential cause of underlying plaintiffs' various injuries.

## IV. CONCLUSION

For the above reasons, the Court should deny Insurers' motion in its entirety.

Dated: December 15, 2025

**SAXE DOERNBERGER & VITA, P.C.**

By: ______________________________

William S. Bennett, Esq.
Daniel A. Thompson, Esq.
Attorneys for Defendant
STONE SOURCE LLC