UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:**     **(IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS [35]**

Before the Court is Plaintiffs' Motion for Judgment on the Pleadings. ECF 35. The Court read and considered the moving, opposing, and reply papers and held a hearing on the Motion on January 13, 2026. ECF 61. For the reasons stated herein, the Court **DENIES** the Motion.

## I.    BACKGROUND

This is an insurance coverage dispute arising out of personal injury claims brought by stoneworkers against various manufacturers and distributors of artificial stone products. Plaintiffs Regent Insurance Company ("Regent"), Stonington Insurance Company ("Stonington"), and QBE Insurance Corporation ("QBEUIC") (collectively, "Plaintiffs" or "Insurers") brought this action against Defendant Stone Source LLC ("Defendant" or "Stone Source"), seeking a declaratory judgment that they owe no coverage or defense to Stone Source under various insurance policies for 45 underlying personal injury actions (the "Underlying Actions"). In the Underlying Actions, the plaintiffs (the "Underlying Plaintiffs") allege that Stone Source's product contained hazardous substances including respirable crystalline silica, as well as metals and volatile organic compounds, which caused injuries including silicosis and related medical conditions. The thrust of the Insurers' Complaint and the instant Motion is that coverage under the insurance policies issued to Stone Source is precluded by the "Silica Exclusion" contained in the policies.

### A.    The Underlying Actions[1]

One such Underlying Action was filed by Antonio Lopez Castillo. Mr. Castillo's

---

[1] The Insurers ask the Court to take judicial notice of the underlying complaints against Stone Source. ECF 39. Under Federal Rule of Evidence 201, "[t]he court may judicially notice

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

complaint includes the following allegations relevant to the instant Motion:

- "All stone products contain crystalline silica in varying concentrations from the lowest concentration of about 3-5% in marble to about 93-95% in traditional artificial stone."   ECF 1-10 ¶ 83.

- The fabrication of stone products "produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases."   *Id.* ¶ 85.

- Fabrication workers "are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders."   *Id.* ¶ 86.

- "In addition to crystalline silica, pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium."   *Id.* ¶ 87.

- "Fabricating artificial stone products also produces volatile organic compounds (VOCs), the predominant species being styrene, but also including phthalic anhydride, benzene, ethylbenzene, and toluene.   Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis."   *Id.* ¶ 88.

- "Throughout the course of his work" as a stone cutter, Mr. Castillo "worked with inherently hazardous stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by [Stone Source].   [Mr. Castillo] was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including

---

a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   Fed. R. Evid. 201.   Courts "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).   The Court therefore takes judicial notice of the underlying complaints identified in the Insurers' request for judicial notice.   ECF 23-142 at 6–16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

quartz and cristobalite), metals . . . and volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products)." *Id.* ¶ 100.

- "As a direct and proximate result of his exposure to silica, metals and other toxins within said stone products . . . [Mr. Castillo] developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma)." *Id.* ¶ 101.

- "At no time did [Mr. Castillo] personally ascertain any ingredients or contaminants of the stone products to which he was exposed in the course of his work that caused his lung disease; [Mr. Castillo] personally remains ignorant of the identity of those hazardous substances to which he was exposed at work that caused his lung disease." *Id.* ¶ 109.

- "As a result of [Mr. Castillo's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Castillo's] body and caused Plaintiff to suffer from specific illnesses, to wit, silicosis and related medical conditions, as set forth in more detail herein." *Id.* ¶ 1068.

- "Each of Defendants' stone products contained silica and toxic metals, that entered [Mr. Castillo's] body and was a substantial factor in causing, prolonging, and aggravating his silicosis and his related and consequential injuries." *Id.* ¶ 1069.

Both parties cite Mr. Castillo's complaint as a "representative example" of the Underlying Actions. ECF 36 at 6; ECF 55 at 7.

**B.     The Policies and Exclusions**

Regent issued a comprehensive commercial general liability policy to Stone Source, which was effective from August 2021 to August 2025. ECF 1 ¶ 13. Stonington took over as an insurer beginning August 2023. *Id.* The primary policy provides coverage "for sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."

The Silica Exclusion in the primary policy issued by Regent provides that the insurance does not apply to "'bodily injury' arising, in whole or in part, out of the actual, alleged, threatened

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

or suspected inhalation of, or ingestion of, 'silica' or silica-related dust.'" ECF 1-2 at 48. The policy defines silica as "silicone dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." *Id.* It further defines silica-related dust as "a mixture or combination of silica and other dust or particles." *Id.*

Regent also issued a commercial umbrella policy, which provides coverage for bodily injury caused by an occurrence, which is also defined as an accident. The Umbrella Policy's Silica Exclusion provides that coverage does not to apply to "[a]ny liability of the insured arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, 'silica' or 'silica-related dust.'" ECF 1-3 at 57.

### C. Procedural History

The Insurers brought this action against Stone Source on July 22, 2025, seeking a declaratory judgment that they do not have a duty to defend or indemnify Stone Source in the Underlying Actions because the Silica Exclusion bars coverage for those suits. ECF 1. Stone Source filed an answer on September 5, 2025. ECF 20.

On December 8, 2025, the Insurers filed the instant Motion for Judgment on the Pleadings. ECF 35. Stone Source opposed. ECF 55. The Court held a hearing on the Motion on January 13, 2026. ECF 61.

On July 28, 2025, Regent filed a Notice of Related Case, indicating that this action concerns the same Underlying Actions and policy exclusions as those at issue in *Hanover American Insurance Co. et al. v. Francini, Inc.*, No. 2:23-cv-10047-MRA-MAA ("*Hanover*"). ECF 11. This action was then transferred to the undersigned judge pursuant to General Order 24-04. ECF 19. Several additional coverage actions were filed by other insurance providers and stone companies concerning the same Underlying Actions and similar silica and pollution policy exclusions, each of which were also noticed as related to *Hanover* and transferred to the undersigned judge. *Pacific Shore Stones, LLC et al. v. Allied Property and Casualty Co. et al.* No. 2:25-cv-04370-MRA-MAA (C.D. Cal. May 14, 2025); *Regent Insurance Company et al v. Cambria Enterprises et al.*, No. 2:25-cv-04142-MRA-MAA (C.D. Cal. May 8, 2025); *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company et al.*, No. 2:25-cv-03895-MRA-MAA (C.D. Cal. May 1, 2025). The insurers filed motions for judgment on the pleadings in those actions as well. Those motions were heard on November 24, 2025, and decided at the same time as the instant Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

## II.    LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are "functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (internal quotation marks omitted). Therefore, "when ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

On a motion for judgment on the pleadings, "[j]udgment is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020). "A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368 (1969)).

## III.    DISCUSSION

### A.    Insurance Coverage Principles

"A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (cleaned up). A "carrier must defend a suit which [p]otentially seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded," or in an action where damages arise from an injury that is ultimately determined to fall outside the scope of the policy or within an exclusion. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993); *see also Saylin v. California Ins. Guarantee Assn.*, 179 Cal. App. 3d 256, 263 (1986) ("[T]he duty [to defend] may exist even where coverage is in doubt and ultimately does not develop." (internal quotation marks omitted)).

The duty to defend is triggered by a "bare 'potential' or 'possibility' of coverage." *Montrose*, 6 Cal. 4th at 300. To prevail in an action seeking declaratory relief on the issue of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

must establish *the absence of any such potential.*"  *Id.*  "The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim."  *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002).  "Thus, even where . . . the allegations in the underlying complaint are primarily focused on non-covered claims, the Court 'look[s] not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy.'"  *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1168 (C.D. Cal. 2015) (quoting *Horace Mann*, 4 Cal. 4th at 1084).

"The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy."  *Horace Mann*, 4 Cal. 4th at 1081.  "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."  *Id.* (citing *Gray*, 65 Cal. 2d at 276).  Stated differently, "facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy."  *Montrose*, 6 Cal. 4th at 296 (citing *Gray*, 65 Cal. 2d at 276).  On the other hand, "the insured may not speculate about unpled third party claims to manufacture coverage."  *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1290 (2015) (quotation marks omitted); *The Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 616 (9th Cir. 2004)).  "The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage."  *The Upper Deck Co.*, 358 F.3d at 616.

In a "mixed" action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend the action in its entirety.  *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997).

### B.    The Silica Exclusion

The Insurers argue that the Silica Exclusion bars coverage of the Underlying Actions because it applies to injuries caused by silica or silica-related dust (*i.e.*, a mixture of silica and other substances), as well as to injuries caused in part by silica or silica-related dust and in part by some other non-excluded substance.  ECF 36 at 13.  According to the Insurers, each Underlying Plaintiff alleges that silica was a substantial factor in bringing about injuries, including silicosis, and none of the underlying plaintiffs allege any injury that was not caused, at least in part, by silica or silica-related dust.  *Id.* at 15.  And to the extent that the injuries were also caused by other, non-excluded substances, that does not affect the applicability of the exclusion, because the exclusion applies to any injury that is *at all* caused by silica or silica-related dust.  *Id.* at 13. The Insurers argue that Stone Source cannot rely on general allegations in the underlying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

complaint about what injuries could potentially be caused by VOCs or metals alone, where the Underlying Plaintiffs do not actually allege that they suffered those injuries.

In response, Stone Source argues that the Insurers have not carried their burden of showing the Silica Exclusion applies because the Underlying Plaintiffs allege that certain stones containing little or no silica, such as marble, were a proximate cause of injuries, and the Insurers have presented no evidence that any Underlying Plaintiff was exposed to a Stone Source product that did contain silica. ECF 55 at 13. Stone Source also argues that the Underlying Plaintiffs were exposed to stone products like serpentine, which is classified as a "phyllosilicate mineral," and it is unsettled whether the definition of "silica" in the policy includes phyllosilicate, where there is a meaningful physical and chemical difference between those minerals. *Id.* at 15. In addition, Stone Source contends that the Underlying Plaintiffs allege injuries caused by volatile organic compounds (VOCs) and metals that fall outside the scope of the exclusion. *Id.* at 16. And to the extent that those non-excluded substances were the concurrent cause of any injury, the law of concurrent causation requires that the insurer defend where one of the risks is covered by the policy. *Id.* at 18.

The Silica Exclusion bars from coverage any bodily injury "arising, in whole or in part" out of silica or silica-related dust. Thus, in considering the Insurers' Motion, the Court must consider whether there is a possibility that the Underlying Actions involve bodily injuries that do not "arise from" silica or silica-related dust. The Court answers this question by looking at the Underlying Plaintiffs' allegations, as well as facts extrinsic to the complaints. *See Montrose*, 6 Cal. 4th at 295; *Gray*, 65 Cal. 2d at 276. If such a possibility exists, then the Insurers owe a duty to defend, regardless of whether the underlying injuries were predominantly, primarily, or substantially caused by silica or silica-related dust. *See KM Strategic Mgmt.*, 156 F. Supp. 3d at 1168.

It is undisputed that the Underlying Plaintiffs allege that they were "not only exposed to high concentrations of respirable crystalline silica, but [were] also exposed to other toxic substances in artificial stone," including many metals and VOCs which can cause pulmonary fibrosis and other pulmonary effects. ECF 1-10 ¶¶ 86–87. Moreover, it appears undisputed that such metals or VOCs do not meet the Policies' definition of "silica," and that because VOCs are gases, they would not meet the Policies' definition of "silica-related dust." ECF 55 at 16; ECF 1-2 at 48 (defining silica-related dust as a "mixture or combination of silica and other *dust* or *particles*" (emphasis added)). And finally, it is undisputed that the Underlying Plaintiffs allege these non-silica substances contributed to their injuries. ECF 1-10 ¶ 1068 ("As a result of [Mr. Castillo's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Castillo] body and caused [Mr. Castillo] to suffer from specific illnesses."). In other words, there is no dispute that the Underlying Plaintiffs allege that they were exposed to toxic substances

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|----------|----------------------|------|----------------|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

that are neither silica nor silica-related dust (and thus covered under the Policies) and that those substances contributed to their injuries.

The question remains, however, whether the Silica Exclusion bars coverage for those injuries where the Underlying Plaintiffs allege that silica and silica-related dust *also* contributed to those injuries.   The Court concludes it does not.

Critically, each Underlying Plaintiff alleges that they "remain[] ignorant of the identity of those hazardous substances to which [they] were exposed at work that caused [their] lung disease." ECF 1-10 ¶ 109.   The Underlying Plaintiffs allege that various toxic substances (generally speaking, silica, metals, and VOCs) can independently cause the lung injuries they suffer from, including lung disease and/or pulmonary fibrosis.  *Id.* ¶¶ 86–87.   But among these different substances, any individual Underlying Plaintiff does not know which precise substance caused their precise injuries.   Given these allegations in the Underlying Actions, it is possible that toxic substances *other* than silica or silica-related dust were the sole cause of the pulmonary fibrosis or lung disease suffered by the Underlying Plaintiffs.   In other words, the Underlying Actions present the possibility that the Underlying Plaintiffs' injuries were not caused by silica or silica-related dust at all—whether that possibility is remote or unlikely is irrelevant.

Ultimately, it is the Insurers' burden to show that the Silica Exclusion applies—*i.e.*, to show that the injuries alleged in the Underlying Actions *do* arise in whole or in part out of the alleged inhalation of silica or silica-related dust.  *See ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 141 (2000) ("When it comes to exclusions, the insurer bears the burden of proving the exclusion applies.").   Given the scientific and fact-intensive nature of the injuries alleged, the Insurers cannot meet this burden at the present stage.

The Court acknowledges that it reached a different conclusion in its prior order granting the insurers' motion for judgment on the pleadings in *Hanover*.   The Court has revisited its decision in that case, and with the benefit of additional briefing and argument from counsel, the Court recognizes that its first order in *Hanover* characterized silica as the "primary" or "main" cause of the Underlying Plaintiffs' injuries.  *See Hanover*, ECF 66 at 8.   But whether silica "predominates" in the   Underlying Actions' complaints is irrelevant to whether the Silica Exclusion precludes coverage.  *See Horace Mann*, 4 Cal. 4th at 1084.   The dispositive question as to the Insurers' Motion is whether there is a "bare 'potential' or 'possibility'" that the Underlying Plaintiffs' bodily injuries were caused by a non-excluded substance, and the Court concludes that there is.

To be sure, silica "predominates" in the Underlying Actions in the sense that the exposures to and the injuries caused by non-excluded substances are uniformly alleged in combination with silica.   For instance, Mr. Castillo alleges that as a result of his exposure to Stone Source's stone

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|----------|------------------------|------|----------------|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

products, "silica, metals *and* other toxins" entered his body and caused him to suffer from "silicosis, pulmonary fibrosis, and related medical conditions." ECF 1-10 ¶ 1608 (emphasis added). Mr. Castillo also alleges that "[e]ach toxin, including silica *and* metals, that entered [Mr. Castillo's] body was a substantial factor in bringing about . . . [Mr. Castillo's] silicosis and his related consequential injuries." *Id.* ¶ 1087 (emphasis added). Reading these allegations in isolation, it would be plausible to conclude that silica contributed, at least in part, to each of the Underlying Plaintiffs' injuries, which would bring the injuries into the scope of the broadly phrased Silica Exclusion.

But upon closer examination of the Underlying Actions and the applicable law, the Court cannot ignore allegations appearing elsewhere in the complaint: that Mr. Castillo developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and that at least some of those conditions can be independently caused by metals and VOCs. ECF 1-10 ¶¶ 86–87, 101. Such allegations, in tandem with the allegation that Mr. Castillo is ignorant of the identity "of those hazardous substances . . . that caused his lung disease," "suggest a claim potentially covered by the [Policies]," and thus trigger a duty to defend. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005). To the extent that the allegations in the Underlying Actions contradict each other or create any ambiguity as to the cause of the Underlying Plaintiffs' injuries, any such ambiguity or doubt must be resolved in Stone Source's favor. *James River Ins. Co. v. SureFire, LLC*, No. 8:24-CV-01556-JVS-KES, 2025 WL 1287891, at *6 (C.D. Cal. Mar. 6, 2025) ("Any ambiguity in the complaint or doubt as to whether the facts give rise to a duty to defend must be resolved in favor of the insured." (citing *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. 2010))).

Moreover, insofar as the Underlying Actions can be interpreted to allege that excluded and non-excluded causes *both* contributed to an Underlying Plaintiffs' injuries, such allegations would not eliminate the duty to defend, even under the broad language of the Silica Exclusion, pursuant to California's concurrent cause doctrine. In *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94 (1973), the California Supreme Court held that where a "homeowner's policy excluded injuries 'arising out of the use of' an automobile, such exclusion does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause." *Id.* at 97. The Court further held that where a non-excluded "risk is a proximate cause of an injury, liability attaches to the insured, and coverage for such liability should naturally follow." *Id.* The Court went on to explain that "[c]overage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury." *Id.*

*Partridge* therefore instructs that, because silica and non-silica substances are each alleged to be substantial factors in causing the Underlying Plaintiff's injuries, the Silica Exclusion does not defeat coverage. In a subsequent case, the California Supreme Court held that "tort law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

(substantial factor) causation is sufficient to create coverage *under a liability policy* when covered and excluded acts or events have concurred in causing injury or property damage." *California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1036 (2009). In *Allstate*, the Court considered whether the insurer was liable for property damage, some of which was caused by covered, accidental pollutant discharges, and some of which was caused by excluded, nonaccidental pollutant discharges. *Id.* at 1030. The exclusion in *Allstate* included the same broad "arising out of" language appearing in the Silica Exclusion here. *Id.* at 1016. And the Court concluded that the fact "that an excluded cause of property damage[] also contributed to the contamination is insufficient to defeat *Partridge*'s holding that liability coverage exists 'whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause.'" *Id.* at 1032 (quoting *Partridge*, 10 Cal. 3d at 105).

*Partridge* and *Allstate* together compel the conclusion that where two substances—one excluded and the other covered—are each alleged to be a substantial factor in causing the Underlying Plaintiff's injuries, the broad "arising out of" language in the exclusion cannot be applied to defeat coverage. A different judge in this district recently applied *Partridge* to a materially similar dispute to reach the same conclusion. *Sompo America Insurance Company v. LX Hausys America, Inc.*, No. CV 25-2832-JFW(MAAx), 2025 WL 4061607, at *4 (C.D. Cal. Dec. 22, 2025). The Court finds the reasoning in *Sompo* persuasive here and similarly concludes that the Insurers "cannot avoid [their] duty to defend where an insured risk and excluded risk are alleged to constitute concurrent proximate causes of the underlying plaintiffs' bodily injuries." *Id.*

Drawing all reasonable inferences in Stone Source's favor, as the Court must do in resolving the Insurers' Motion, the Court concludes that Stone Source has demonstrated the existence of potential for coverage—*i.e.*, the existence of injuries in the Underlying Actions that would not fall within the scope of the Silica Exclusion. The Insurers are therefore not entitled to judgment on the pleadings that they owe no duty to defend based on the Silica Exclusion.

### C.    Duty to Indemnify

"Where there is a duty to defend, there *may be* a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (2001). "The duty to indemnify arises after a judgment has been entered against the insured on a theory which is in fact, rather than merely potentially, covered by the policy." *Oruna v. Burlington Ins. Co.*, No. 222CV03425SPGGJSX, 2023 WL 5667539, at *10 (C.D. Cal. June 6, 2023) (citing *Lloyd's*, 24 Cal. 4th at 958). The Court therefore denies the Insurers' Motion as unripe to the extent that it concerns its duty to indemnify Stone Source.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-06702-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Regent Insurance Co. et al. v. Stone Source LLC* | | |

To be clear, the Court's denial of the Insurers' Motion is not a conclusive determination that coverage under the Policies has been established.  Rather, the outcome reached by the Court is based upon its conclusion that, at the present stage, the injuries alleged in the Underlying Actions are potentially covered under the Policies.  In any given Underlying Action, if it is determined that the plaintiff's injuries were in fact caused by substances that fall within the Silica Exclusion or Pollution Exclusion, the Insurers may at that point be able to show that "no claim can in fact be covered," and the duty to defend would be extinguished.  *Buss*, 16 Cal. 4th at 46.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Judgment on the Pleadings [35].

**IT IS SO ORDERED.**

_____ : _____

Initials of Deputy Clerk        mku